UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


DAVID A. DUNBAR,                :      CIVIL NO. **1:05-CV-1594**
                                :
            Plaintiff           :
       v.                       :      (Magistrate Judge Smyser)
                                :
KENNITH JONES, *et al.,*        :
                                :
            Defendants          :


                      **MEMORANDUM AND ORDER**


I. Background and Procedural History.

     On August 8, 2005, the plaintiff, a prisoner proceeding
*pro se*, commenced this 42 U.S.C. § 1983 action by filing a
complaint.  On December 19, 2005, the plaintiff filed an
amended complaint.  In his amended complaint, the plaintiff
named as defendants twenty-four corrections officials and
employees.  He also named as defendants an additional twenty
John and Jane Does.


     The parties consented to proceed before a magistrate
judge pursuant to 28 U.S.C. § 636(c), and the case was
reassigned to the undersigned on January 19, 2006.

By a Memorandum and Order dated March 2, 2006, we granted in part and denied in part the defendants' motion to dismiss the amended complaint.  The plaintiff's due process claims against defendants Hearing Examiners Jones and McKeown were dismissed, the claims against defendants Cywinski, Mosier and Bleich were dismissed, and the claims against the defendants in their official capacities for monetary damages were dismissed.  In all other respects the defendants' motion to dismiss the amended complaint was denied.

On May 30, 2006, after being granted leave of court, the plaintiff filed a second amended complaint.  In the second amended complaint, the plaintiff named only six defendants.  The defendants named in the second amended complaint were: Lisa Bolka, Corrections Officer Jeffrey Cywinski, Corrections Officer Fritz Bleich, Correction Officer Moiser, Hearing Examiner Donald Jones and Hearing Examiner Charles McKeown.

By an Order dated November 13, 2006, we addressed the defendants' motion to dismiss the second amended complaint. The claims against the defendants in their official capacities for monetary damages were dismissed.  Also the

2

case was dismissed as to all defendants who were named in the amended complaint but not named in the second amended complaint, i.e. the case was dismissed as to all defendants except defendants Bolka, Cywinski, Bleich, Moiser, Jones and McKeown.

On November 20, 2006, the plaintiff filed a motion for leave to file a third amended complaint to cure the defects in the first and second amended complaints.  The plaintiff asserted that he misunderstood the Order granting him leave to file a second amended complaint.  He stated that he did not understand that he had to include in his second amended complaint claims that were not dismissed in connection with the defendants' motion to dismiss the amended complaint.  He stated that he included in his second amended complaint only the claims against defendant Bolka (originally identified as a Jane Doe) and the defendants who were dismissed as a result of the defendants' motion to dismiss the amended complaint. The plaintiff stated that if he is allowed to file a third amended complaint he will cure all defects in his amended and second amended complaints.

The remaining defendants at the time - defendants Bolka, Cywinski, Bleich, Moiser, Jones and  McKeown - did not file a brief in opposition to the plaintiff's motion for leave to file a third amended complaint.  However, on February 15, 2007, the defendants filed a motion for summary judgment, a statement of material facts, a brief and documents in support of their motion.  After being granted leave of court, on February 22, 2007, the defendants filed additional documents in support of their motion.

In an Order dated March 20, 2007, we recognized that granting the plaintiff leave to file a third amended complaint will delay this case which has already been pending for a considerable period of time.  However, since the plaintiff is proceeding *pro se,* since the plaintiff explained that his failure to comply with the requirement that his second amended complaint be complete in all respects was based on his misunderstanding of that requirement, since the plaintiff indicated that he will comply with the requirement that any third amended complaint be complete in all respects

4

and since the defendants did not oppose the motion, we granted the plaintiff's motion for leave to file a third amended complaint.

On March 19, 2007, the plaintiff filed a third amended complaint.

The third amended complaint names twenty four individuals as defendants: 1) Kennith Jones, a corrections officer at SCI-Dallas; 2) Joseph M. Bendick, a corrections officer at SCI-Dallas; 3) Michael J. Zablotney, a corrections officer at SCI-Dallas; 4) John Galabinski, a corrections officer at SCI-Dallas; 5) John Gottshall, a corrections officer at SCI-Dallas; 6) John Konycki; a sergeant at SCI-Dallas; 7) Bruce Mosier, a sergeant at SCI-Dallas; 8) Daniel J. Kowalski, a lieutenant at SCI-Dallas; 9) Frederick Bleich, a lieutenant at SCI-Dallas; 10) Jeffrey Cywinski, a lieutenant at SCI-Dallas; 11) Stanly Pohlidal, a captain at SCI-Dallas; 12) Peter Cwalina, a captain at SCI-Dallas; 13) Donald Jones, a hearing examiner at SCI-Dallas; 14) Charles McKeown, a hearing examiner at SCI-Dallas; 15) Dianna J.

5

Dean, a corrections counselor at SCI-Dallas; 16) Lisa Bolka, a secretary of E-block at SCI-Dallas; 17) Donald Jones, a major of the guards at SCI-Dallas; 18) James McGrady, the deputy superintendent for facility management at SCI-Dallas; 19) Edgar Kneiss, the deputy superintendent for centralized services at SCI-Dallas; 20) Norman Demming, the corrections classification program manager at SCI-Dallas; 21) Kenneth Burnett, a corrections counselor and grievance coordinator at SCI-Dallas; 22) James T. Wynder, the Superintendent at SCI-Dallas; 23) Sharon M. Burks, the Chief Grievance Officer for the Pennsylvania Department of Corrections (DOC); and 24) Jeffrey A. Beard, the Secretary of the DOC.[1]

The plaintiff alleges the following facts in his third amended complaint.  On June 28, 2004, the plaintiff, while locked in his cell, witnessed an altercation between staff and another inmate. *Third Amended Complaint at ¶20*.  The

---

[1] The caption of the third amended complaint also names John and Jane Doe 1-20 as defendants.  However, the body of the third amended complaint does not name any Doe defendants and there are no allegations in the third amended complaint regarding any Doe defendants.  We will not consider further any Doe defendants.

6

plaintiff unsuccessfully attempted to talk the other inmate into avoiding the altercation. *Id.*

After the incident the plaintiff observed defendants Bolka and Dean on the block. *Id. at ¶21.* After the incident and after the plaintiff spoke with defendant Dean at his cell, officer Kubiak and defendants Bendick and Kennith Jones came to the plaintiff's cell. *Id. at ¶23.* Defendant Jones stated to the plaintiff: "Hey Dunbar, you didn't like what happened to your hommie you Faggot! I got something for you, you like to run your mouth, I got something for you." *Id.* The defendants then left the plaintiff's cell but defendant Jones later returned and said: "Fuck that you little NIGGER FAGGOT! I'm going to get you, you like to run your mouth, pack your shit." *Id. at ¶24.* At the time, defendant Bolka was standing directly in front of the plaintiff's cell and witnessed what was being said by defendant Jones. *Id.*

After defendant Jones left, the plaintiff called out to defendant Zablotney and requested to speak to defendant Kowalski because the officers had just threatened him. *Id. at*

¶25.  Defendant Zablotney told the plaintiff to stay out of it (meaning the incident with the other inmate). *Id.*  Again, defendant Bolka witnessed this exchange. Id.

Defendants Kennith Jones and Bendick along with officer Kubiak ran back onto the block, handcuffed the plaintiff, removed the plaintiff from his cell and led him into the stairwell. *Id. at* ¶26.  This occurred in front of defendants Bolka, Zablotney, Kowalski and other inmates. *Id.*  In the stairwell, defendant Jones repeatedly punched the plaintiff in the face and called him a "faggot" and "nigger." *Id. at* ¶27.  Officer Kubiak slammed the plaintiff's head into the wall, helped knock the plaintiff to the ground, and then repeatedly banged the plaintiff's head into the ground while calling him racial names and threatening to kill him. *Id.* Defendant Bendick repeatedly kicked the plaintiff in the back and stomped on him while also calling him racial names. *Id.*

Defendants Dean, Bolka, Kowalski and Zablotney failed to intervene or stop the attack on him by the other officers. *Id. at* ¶35.  These defendants had a reasonable opportunity to

intervene and simply refused to do anything to help the plaintiff. *Id.*

After the assault, the plaintiff was escorted to the control center by defendant Kowalski. *Id. at ¶36.* The plaintiff attempted to tell defendant Major Donald Jones that he was just assaulted. *Id.* Defendant Jones stated that the plaintiff was not to bother coming to the program review committee. *Id.* The plaintiff was then taken to the medical department where he was examined and photographs of his injuries were taken. *Id. at ¶37.* From there the plaintiff was taken to the restricted housing unit (RHU) where he later received two misconduct reports based on the incident. *Id. at ¶38.* The misconduct reports were fabricated to cover up the assault on the plaintiff. *Id.*

At the disciplinary hearing on the two misconducts, defendant Hearing Examiner Jones found the plaintiff guilty of the fabricated misconducts. *Id. at ¶51.* The plaintiff indicated that he was in his cell at the time alleged and he requested to call witnesses who would have testified that he

was in his cell and that he did not assault the officers or refuse any orders. *Id.*  Defendant Jones stated to the plaintiff: "If you would have kept your mouth shut Mr. Dunbar, you would never have been in this predicament." *Id.* Defendant Hearing Examiner Jones did not investigate the plaintiff's allegations and found him guilty based solely on defendant Bendick's and defendant Kennith Jones' version of what had happened. *Id.*  The plaintiff alleges that defendant Hearing Examiner Jones conspired to violate his rights. *Id.*

The plaintiff wrote to and filed inmate requests with defendants Cwalina, Wynder, Kneiss, Demming, McGrady, Pohlidal, Major Jones, Kowalski and Beard about the assault as well as appealing the misconducts to final appeal. *Id. at ¶39 & ¶52.*

On July 11, 2004, after continuous appeals to the above-named defendants, the plaintiff began to file multiple grievances regarding the incident. *Id. at ¶41.*  No investigation was conducted but his grievances were responded to by defendants Burnett, Wynder and Burks. *Id. at ¶ 41.*

10

The plaintiff also sought help from outside sources and he wrote approximately 75 letters to governmental officials outside of SCI-Dallas. *Id. at ¶23 & ¶53.*

On November 1, 2004, the plaintiff received a response from defendant Burks concerning his grievances. *Id. at ¶43.* The grievances were remanded back to defendants Wynder and Bleich, who both still refused to intervene. *Id.*

The plaintiff wrote to defendant Burnett and complained that his grievances were not being handled in the manner prescribed by Department of Corrections' regulations. *Id. at ¶44.* The plaintiff constantly asked to be interviewed regarding his allegations of abuse but was only told to stop complaining. *Id.*

On July 21, 2004, defendant Galabinski entered the plaintiff's cell and removed an outgoing legal letter addressed to the Department of Justice. *Id. at ¶54.* The letter exposed the many constitutional violations that were happening at SCI-Dallas and named the defendants in this

11

case. *Id. at ¶62.*  The plaintiff filed a grievance regarding the confiscation of the letter and claimed that he was being retaliated against for attempting to send the letter to governmental officials. *Id. at ¶57.*

The plaintiff subsequently received a misconduct report issued by defendant Cywinski charging him with possession or circulation of a petition in violation of DOC regulations. *Id. at ¶55.*  In retaliation for the letter, the plaintiff was found guilty by defendant Hearing Examiner Jones and received an additional 90 days disciplinary custody time. *Id. at ¶56.* The sanction was meant to deter the plaintiff from exposing what was happening at SCI-Dallas. *Id.*

On July 22, 2004, defendant Kennith Jones threatened the plaintiff by stating that he should have killed him on June 28th and that he and his friends would see him again real soon. *Id. at ¶28*.  Later, while the plaintiff was being escorted to the yard by defendants Galabinski and Gottshall, defendant Jones met the plaintiff in the stairwell and kicked the plaintiff in his behind as he was going down the stairs.

12

*Id.* Upon entering the yard area, the plaintiff told defendant Mosier, who knew that the plaintiff was in the RHU as a result of the prior incident with defendant Jones, that he had just been assaulted. *Id. at ¶29.* Defendant Mosier stated that he did not see an assault. *Id.*

After the plaintiff complained of being assaulted and requested to be seen by medical staff, defendant Moiser laughed as defendants Jones and officer Kolenda came to the plaintiff's yard cage and attempted to remove the plaintiff from the cage and return him to his cell. *Id. at ¶30.* The plaintiff hollered into the yard that he feared for his life by going with the officers. *Id.* Defendant Moiser then threatened the plaintiff with a misconduct report if he didn't comply with the order to return to his cell. *Id.* Two other officers observed what was happening and came to the plaintiff's cage and returned him to his cell. *Id.*

On October 14, 2004, defendant Kennith Jones came to the plaintiff's cell and called the plaintiff racist names. *Id. at ¶*31. Defendant Jones said: "You NIGGERS are so fucken

13

stupid, all alike. We kick your asses and who do you run to looking for help." *Id. at ¶¶ 31 & 63.* After the plaintiff told defendant Jones that the truth would come out, defendant Jones said "like I said you NIGGER'S are all alike" and then spit straight into the plaintiff's face. *Id. at ¶¶32 & 64.* Sometime thereafter defendant Konycki came to the plaintiff's cell with a grievance form, the plaintiff explained what had happened, and defendant Konycki stated that he was not going to get involved and left. *Id. at ¶65.*

The plaintiff unsuccessfully attempted to have a DNA test conducted on the tissue that he had used to wipe defendant Jones' spit from his face. *Id. at ¶¶66 & 68.*

The plaintiff received two additional misconducts in retaliation for speaking out about being spit on. *Id. at ¶67.* Every time the plaintiff spoke out about abuse that he was suffering he was issued a retaliatory misconduct. *Id.*

On October 18, 2004, defendant McKeown conducted a disciplinary hearing on the two latest misconducts received

14

by the plaintiff. *Id. at ¶68.*  Defendant McKeown refused to allow the plaintiff to call the witnesses he requested and refused to conduct a DNA test on the tissue the plaintiff had purportedly used to wipe defendant Jones' spit from his face. *Id.*  Based solely on the officers' version of events the plaintiff was found guilty and sanctioned with 210 days in the RHU. *Id.*

On September 16, 2004, the plaintiff was seen by the program review committee and defendants McGrady, Demming and Major Jones. *Id. at ¶46.*  The plaintiff was told to stop complaining and worrying people. *Id.*  He was told that if he would stop complaining there was a good chance he would be let back into population. *Id.*

The plaintiff wrote to defendant Kneiss after this meeting. *Id.*  On October 21, 2004, the plaintiff asked defendants Kneiss and Demming why they were doing this to him when everyone knows that he didn't do anything wrong and that he had been assaulted and retaliated against. *Id. at ¶47.*

Defendant Kneiss then put his hands in the air and smiled without saying anything. *Id.*

The plaintiff claims that the defendants violated his First, Eighth and Fourteenth Amendment rights.  He also presents state law claims.

The plaintiff filed a motion to dismiss the motion for summary judgment filed by defendants Bolka, Cywinski, Bleich, Moiser, Jones and McKeown as moot in light of the fact that he filed a third amended complaint.  By an Order dated April 23, 2007, the plaintiff's motion to dismiss the motion for summary judgment as moot was denied without prejudice to the plaintiff arguing, if appropriate, in his brief in opposition to the motion for summary judgment that specific arguments raised by defendants Bolka, Cywinski, Bleich, Moiser, Jones and McKeown in connection with their summary judgment motion are moot in light of changes made to the claims against those defendants in the third amended complaint.  The plaintiff was ordered to file a brief in opposition to the motion for summary judgment, a response to the moving defendants'

statement of material facts and any relevant summary judgment evidence he has in opposition to the motion for summary judgment.

On May 14, 2007, the plaintiff filed a brief in opposition to the motion for summary judgment, a statement of material facts and documents in opposition to the motion.

On May 22, 2007, the defendants filed an answer to the third amended complaint.

On May 29, 2007, defendants Bolka, Cywinski, Bleich, Moiser, Jones and McKeown filed a reply brief in support of their motion for summary judgment.

II. Summary Judgment Standard.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

17

moving party is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(c).  "The moving party bears the initial
burden of demonstrating the absence of any genuine issue of
material fact, though the non-moving party must make a
showing sufficient to establish the existence of each element
of his case on which he will bear the burden of proof at
trial." *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir.
2001); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

    "A factual dispute is material if it bears on an
essential element of the plaintiff's claim, and is genuine if
a reasonable jury could find in favor of the nonmoving
party."  *Natale v. Camden County Correctional Facility*, 318
F.3d 575, 580 (3d Cir.  2003).  In determining whether an
issue of material fact exists, the court must consider all
evidence in the light most favorable to the non-moving party.
*White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir.
1988).  "Our function at the summary judgment stage is not to
weigh the evidence and determine the truth of the matter, but
to determine whether there is a genuine issue for trial."

*Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003).

III. Discussion.

    A. Mootness.

The plaintiff argues that the motion for summary judgment filed by defendants Bolka, Cywinski, Bleich, Moiser, Jones and McKeown should be dismissed as moot because of changes he made in the claims against them in his third amended complaint.  However, the plaintiff's claims in the third amended complaint against defendants Bolka, Cywinski, Bleich, Moiser, Jones and McKeown are substantially the same as the claims against those defendants in the second amended complaint.  Thus, we will not dismiss the motion for summary judgment as moot.

    B. Exhaustion.

    42 U.S.C. § 1997e(a), provides:

    No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in

any jail, prison, or other correctional facility
until such administrative remedies as are available
are exhausted.

Pursuant to § 1997e(a), the exhaustion of available administrative remedies is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001).  The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking.  *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000).  "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77.

Failure to exhaust available administrative remedies is an affirmative defense. *Jones v. Bock,* 127 S.Ct. 910, 921 (2007).  As an affirmative defense, the failure to exhaust available administrative remedies must be pleaded and proven

20

by the defendants.  *Brown v. Croak*, 312 F.3d 109, 111 (3d
Cir. 2002).

42 U.S.C. § 1997e(a) requires proper exhaustion.
*Woodford v. Ngo,* 126 S.Ct. 2378, 2387 (2006).  In other
words, § 1997e(a) requires more than simple exhaustion - i.e.
more than that there is no further process available to the
inmate within the grievance system. *Spruill v. Gillis*, 372
F.3d 218, 227-31 (3d Cir. 2004).  Section 1997e(a) requires
that an inmate follow the procedural requirements set forth
in the administrative remedy process that is available to
him. *Id. at 231.*  The prison grievance procedures supply the
yardstick for measuring whether exhaustion was proper. *Id.*
*See also Jones v. Bock,* 127 S.Ct. 910, 923 (2007)("The level
of detail necessary in a grievance to comply with the
grievance procedures will vary from system to system and
claim to claim, but it is the prison's requirements, and not
the PLRA, that define the boundaries of proper exhaustion.").

The Pennsylvania Department of Corrections has
implemented an official Inmate Grievance System.  The

21

grievance system is governed by Administrative Directive 804
(DC-ADM 804).  DC-ADM 804 sets forth a three-tier
administrative remedy system.  Pursuant to DC-ADM 804, an
inmate is required to present his grievance to the Facility
Grievance Coordinator for initial review within fifteen days
after the events upon which the grievance is based.  The
inmate is required to appeal an adverse determination by the
Facility Grievance Coordinator to the Facility Manager.  From
there the inmate must appeal to the Secretary's Office of
Inmate Grievances and Appeals.

Initial review of issues relating to misconducts and
inmate discipline are completed in accordance with the
procedures outlined in Administrative Directive (DC-ADM 801),
not the inmate grievance system under DC-ADM 804.  If an
inmate is found guilty of a misconduct charge by a hearing
examiner, the inmate may appeal to the Program Review
Committee (PRC), then to the Superintendent of the
institution, and finally to the Chief Hearing Examiner.

Defendant Bolka contends that the plaintiff procedurally defaulted his claim against her because the grievance he filed regarding the alleged use of force against him on June 28, 2004 does not mention her. *See Spruill*, *supra,* 372 F.3d at 234 (holding that DC-ADM 804 made it mandatory for an inmate to include in his grievance the facts relevant to his claim, that the identity of a defendant is a fact relevant to an inmate's claim, and that therefore it was mandatory for an inmate to include the identity of the defendant in his grievance).

The plaintiff responds that he did not name defendant Bolka in his grievance because at the time that he filed his grievance he did not know who she was or that she was present during the assault.  The plaintiff's grievance is dated July 14, 2004.  The plaintiff states in his brief that it was not until August 5, 2004, when he spoke to defendant Dean, that he learned who defendant Bolka was and that she was present during the incident.

23

Defendant Bolka replies that the plaintiff should have amended his grievance to identify her.  Although it seems reasonable that the plaintiff should have amended his grievance to identify defendant Bolka after his conversation with defendant Dean, defendant Bolka has not pointed to anything in DC-ADM 804 that would require or even allow an inmate to amend a grievance.  Nevertheless, the plaintiff clearly had the opportunity to identify defendant Bolka (if not by name[2] then by title) during the appeals of his grievance.  We conclude that because he failed to do so, the plaintiff has procedurally defaulted his claim against defendant Bolka.  The motion for summary judgment will be granted as to the plaintiff's claim against defendant Bolka.

Defendant McKeown argues that the plaintiff procedurally defaulted his claims against him by failing to appeal his decisions on the misconducts issued to the plaintiff to final review.  The plaintiff, however, asserts that he did appeal defendant McKeown's decisions to final review and he has

---

[2] The plaintiff asserts that he did not learn of defendant Bolka's name until the discovery phase of this case.

24

submitted cover letters that he asserts indicate that he did

mail his appeals to the appropriate authorities.  We conclude

that there is a material factual dispute about whether the

plaintiff properly exhausted available administrative

remedies with regard to his claims against defendant McKeown.[3]

Accordingly, defendant McKeown will not be granted summary

judgment on the basis that the plaintiff failed to exhaust

administrative remedies.


     C. Retaliation Claims.

     The plaintiff claims that defendants Cywinski, Bleich,

Mosier, Jones and McKeown retaliated against him for

exercising his constitutionally-protected rights.


     A prisoner claiming that prison officials have

retaliated against him for exercising his constitutional

rights must prove that: 1) the conduct of which he was

---

     [3] Defendant McKeown argues in his reply brief that he
should not be penalized for the alleged loss in the mail of the
plaintiff's appeal documents.  However, assuming that the
plaintiff mailed the documents, it is nevertheless not clear on
the record of this case whether the documents were lost in the
mail or lost at the institution by prison staff.

engaged was constitutionally protected; 2) he suffered

"adverse action" at the hands of prison officials; and 3) his

constitutionally protected conduct was a substantial or

motivating factor in the decision of the defendants. *Carter*

*v. McGrady,* 292 F.3d 152, 158 (3d Cir. 2002).  "Once a

prisoner has made his *prima facie* case, the burden shifts to

the defendant to prove by a preponderance of the evidence

that it 'would have made the same decision absent the

protected conduct for reasons reasonably related to

penological interest.'" *Id.* (quoting *Rauser v. Horn*, 241 F.3d

330, 334 (3rd Cir. 2001)).


    The plaintiff claims that defendant Cywinski retaliated

against him by issuing him a misconduct for possessing and

circulating a petition.  Defendant Cywinski contends that he

should be granted summary judgment because he would have made

the same decision to issue the misconduct despite the

plaintiff's constitutionally protected activity.  Defendant

Cywinski asserts that DC-ADM 801 makes it a Class I

misconduct for an inmate to possess or circulate a petition

signed by two or more persons and that a petition is defined

26

as a document signed by two or more inmates requesting or

demanding that something happen.  The plaintiff asserts that

he was not in possession of and did not circulate a petition.

He asserts that the document that forms the basis of the

misconduct issued by defendant Cywinski was a letter to the

Department of Justice.  Although the plaintiff does not

dispute that the document had the signature of other inmates,

he contends that the document was not a petition, as that

term is defined in the DOC's regulation, because it did not

request or demand anything and no one could reasonably

interpret the document as a petition.

In connection with the instant summary judgment motion,

neither the defendants nor the plaintiff has provided the

court with a copy of the document that formed the basis of

the misconduct issued by defendant Cywinski.  Accordingly, we

can not conclude whether the document was a petition, as that

term is defined in the DOC regulation, or whether the

document could have reasonably been construed as a petition

by defendant Cywinski.  Therefore, we can not conclude as a

matter of law that defendant Cywinski would have issued the

misconduct despite the plaintiff's constitutionally protected activity.  Consequently, summary judgment will not be granted to defendant Cywinski on the plaintiff's retaliation claim.

The plaintiff claims that defendant Bleich acted in retaliation by rejecting his grievance concerning the confiscation of the document addressed to the Department of Justice.  Defendant Bleich contends that he should be granted summary judgment on the plaintiff's retaliation claim because he rejected the plaintiff's grievance because it was against DOC policy for an inmate to possess or circulate a petition. As did defendant Cywinski, defendant Bleich contends that he would have made the same decision despite the plaintiff's constitutionally protected activity.  Again, however, without the document that defendant Bleich contends was a petition and that the plaintiff contends was merely a letter, we can not conclude as a matter of law that defendant Bleich would have denied the plaintiff's grievance for legitimate penological reasons despite the plaintiff's constitutionally protected activity.  Consequently, summary judgment will not

be granted to defendant Bleich on the plaintiff's retaliation claim.[4]

The plaintiff claims that Hearing Examiners Jones and McKeown found him guilty of institutional misconduct in retaliation for his legal activity.  Defendants Jones and McKeown assert that their decisions were based on a preponderance of the evidence, that they did not base their rulings on any improper or retaliatory reason and that, as was within their discretion to do so, they found the reports and testimony of the corrections officer more credible than the testimony of the plaintiff.  Defendants Jones and McKeown argue that whether or not the plaintiff engaged in legally-protected conduct, they would have made the same decisions with respect to the misconducts issued to the plaintiff and

------

[4] In the section of their brief addressing the plaintiff's retaliation claims against defendants Cywinski and Bleich, the moving defendants also indicate that they are seeking summary judgment on the plaintiff's retaliation claim against defendant Mosier.  However, the defendants make no argument for why summary judgment should be granted to defendant Mosier. Therefore, we do not consider in this Memorandum and Order the retaliation claim against defendant Mosier.

that their decisions were reasonably related to legitimate
penological reasons.

The plaintiff disputes that he committed the offenses
with which he was charged in the misconducts.  He essentially
argues that if he had been permitted to call the witnesses he
requested he could have established that he did not commit
the offenses with which he was charged.

On the current record, we can not conclude as a matter
of law that defendants Jones and McKeown would have found the
plaintiff guilty of institutional misconduct despite the
plaintiff's constitutionally protected activity.
Consequently, summary judgment will not be granted to
defendants Jones and McKeown on the plaintiff's retaliation
claims.

IV. Order.

**IT IS ORDERED** that the motion (doc. 103) for summary
judgment filed by defendants Bolka, Cywinski, Bleich, Moiser,

30

Jones and McKeown is **GRANTED IN PART AND DENIED IN PART**.  The

motion is granted as to the plaintiff's claim against

defendant Bolka.  The motion is otherwise denied.  The Clerk

of Court shall refrain from entering judgment in favor of

defendant Bolka until the conclusion of the entire case.

**IT IS FURTHER ORDERED** that any further discovery in this case

shall be planned and commenced so as to be completed by

September 6, 2007, and that any further dispositive motions

shall be filed on or before October 5, 2007.


                                        **_/s/ J. Andrew Smyser_**
                                        J. Andrew Smyser
                                        Magistrate Judge

Dated:  July 9, 2007.


31